IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 121,682
121,823

STATE OF KANSAS,
*Appellee*,

v.

J'MARIO D. ROBERTS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under Kansas statute, the State bears the burden to prove criminal history at sentencing. The State can satisfy its burden to establish criminal history by preparing for the court and providing to the offender a summary of the offender's criminal history. If the defendant provides written notice of any error in the summary criminal history report and describes the exact nature of that error, then the State must go on to prove the disputed portion of the criminal history. In the event the offender does not provide the required notice of alleged criminal history errors, the previously established criminal history in the summary satisfies the State's burden, and the burden of proof shifts to the offender to prove the alleged criminal history error by a preponderance of the evidence in any later challenge.

2.

A notice of error in the criminal history prepared for sentencing that is not raised at or before sentencing is a "later challenge" to criminal history under K.S.A. 2020 Supp. 21-6814(c) and shifts the burden to the offender to prove the error.

1

3.

A person accused of a misdemeanor has a Sixth Amendment right to counsel if the sentence to be imposed upon conviction includes a term of imprisonment, even if the jail time is suspended or conditioned upon a term of probation.

4.

In the absence of a valid waiver of counsel, an uncounseled misdemeanor conviction obtained in violation of the misdemeanant's Sixth Amendment right to counsel may not be collaterally used for sentence enhancement in a subsequent criminal proceeding.

5.

Absent an objection under our state procedural statute setting forth the burden of proof in establishing criminal history, a presumption of regularity attaches to a final conviction judgment entered in a prior case.

6.

As a matter of first impression, a defendant who fails to object at or before sentencing to the constitutional validity of a prior conviction used to enhance a current sentence, based on a claim of absence of counsel without a valid waiver, has the burden to show by a preponderance of the evidence that the prior conviction is invalid, regardless of whether the defendant's post-sentencing challenge to the allegedly uncounseled prior conviction is brought on direct appeal of the current sentence or in a proceeding collaterally attacking that sentence. Absent such a showing, the prior conviction is presumed to be regular and valid.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 4, 2020. Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed November 19, 2021. Judgment of the Court of Appeals dismissing the appeal of the issue on review is affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.:  J'Mario D. Roberts contends for the first time on appeal that his sentence is illegal. Specifically, Roberts argues the State failed to meet its burden at sentencing to prove his criminal history score by a preponderance of the evidence because it did not present evidence that three of Roberts' prior person misdemeanors—which were converted to a person felony pursuant to K.S.A. 2020 Supp. 21-6811(a) and led to an enhanced sentence—were either counseled or that he waived the right to counsel in those proceedings.

FACTS

The State charged Roberts with four counts of possession of various drugs and one count of criminal possession of a weapon by a felon. The State later charged Roberts in a separate criminal case with one count of possession of a weapon by a felon and a traffic misdemeanor. Under a global plea agreement resolving both cases, Roberts pled guilty to possession of an opiate, possession of cocaine, and criminal possession of a weapon in the first and second cases. All remaining counts were dismissed.

3

Before sentencing, the district court ordered that a presentence investigation (PSI) report be prepared in both cases. Relevant here, the PSI reports showed that Roberts had three prior misdemeanor municipal court convictions from 2010: one for domestic battery and two for violating a protective order. There is no indication in either report or in the record that Roberts had a right to counsel during these proceedings, and if he did have a right, whether he was counseled during those proceedings or waived his right to counsel. These three prior municipal convictions were converted to a person felony under K.S.A. 2017 Supp. 21-6811(a). This additional person felony raised Roberts' criminal history score from a C to a B.

At the sentencing hearing in October 2018, the district court made inquiries related to the criminal history and the criminal history score reflected in the PSI reports:

"THE COURT: . . . Criminal history in both cases, according to the presentence investigation, is scored at B. Does counsel agree upon the criminal history in each case?

"MR. BABER: The State does, yes, Your Honor.

"MR. MAULDIN: No objection, Judge.

"THE COURT: Mr. Roberts, do you personally admit the criminal history is correct?

"THE DEFENDANT: Yes, Your Honor."

After receiving these answers, the court made a finding on the record that Roberts' criminal history score was B. The court then sentenced Roberts to 36 months in prison in the first case and a consecutive 19-month prison term in the second case. Based on the plea agreement, however, the court granted Roberts' motion for a downward dispositional departure to probation in both cases.

4

In April 2019, Roberts stipulated to violating his probation by missing curfew. He waived a hearing on the issue and agreed to serve a 48-hour "quick dip" in jail as an intermediate sanction. Three months later, Roberts stipulated to nine additional probation violations, including the commission of three new crimes. The district court bypassed additional intermediate sanctions, revoked Roberts' probation, and imposed the underlying sentence in each case. Roberts appealed.

In his brief to the Court of Appeals, Roberts made two arguments: (1) the district court erred in revoking his probation and imposing the underlying sentences without first imposing other intermediate sanctions; and (2) the district court imposed an illegal prison sentence because the State failed to meet its burden at sentencing to prove that the three prior misdemeanor municipal court convictions were counseled or that he waived that right.

The Court of Appeals panel first affirmed the probation revocation and imposition of the underlying sentences, finding that the district court had the authority to bypass other intermediate sanctions because Roberts admitted to committing new crimes while on probation. *State v. Roberts*, No. 121,682, 2020 WL 5268197, at *3 (Kan. App. 2020) (unpublished opinion). The panel then took up and rejected Roberts' illegal sentence challenge. Specifically, it found that the State met its burden to prove Roberts' criminal history at sentencing when Roberts (1) admitted to the score and (2) failed to object to any alleged errors in the criminal history worksheets. The panel ruled that the State met its initial burden to establish criminal history, which under K.S.A. 2020 Supp. 21-6814(c) caused the burden to shift to Roberts to prove that the prior misdemeanor convictions were constitutionally infirm. Because he failed to provide any evidence showing that his misdemeanor convictions were uncounseled or that he did not waive that right in those

5

proceedings, the Court of Appeals held Roberts failed to meet his burden to show his sentences were illegal. 2020 WL 5268197, at *4.

Roberts timely filed a petition for review as to both issues. This court granted his petition as to the illegal sentencing matter only.

ANALYSIS

Roberts claims the State failed to prove the facts necessary to include three municipal convictions in calculating his criminal history score and that this failure renders his sentences illegal. Although Roberts did not object to his criminal history score before the district court, a challenge to a district court's criminal history score calculation presents an illegal sentence claim. *State v. Neal*, 292 Kan. 625, 631, 258 P.3d 365 (2011). Whether a sentence is illegal is a question of law over which an appellate court exercises unlimited review. The burden of proof issue raised by Roberts necessarily involves interpretation of the revised Kansas Sentencing Guidelines Act (KSGA). Like the legality of a sentence, statutory interpretation is a question of law over which we have unlimited review. *State v. Bryant*, 310 Kan. 920, 921, 453 P.3d 279 (2019).

Under the KSGA, a criminal sentence is based on two controlling factors:  the defendant's criminal history and the severity level of the crime committed. See K.S.A. 2020 Supp. 21-6804(c); K.S.A. 2020 Supp. 21-6807 (crime severity scale for nondrug crimes); K.S.A. 2020 Supp. 21-6808 (crime severity scale for drug crimes); K.S.A. 2020 Supp. 21-6810 (criminal history score categories). When calculating a defendant's criminal history score, three person-misdemeanor convictions are aggregated to constitute one adult person-felony conviction. K.S.A. 2020 Supp. 21-6811(a).

6

Roberts argues the State did not prove at the sentencing hearing that his three prior misdemeanor municipal court convictions were counseled or that he waived his right to counsel. In the absence of this affirmative showing by the State, Roberts argues those three convictions should not have been converted to a person felony or used to increase his criminal history score.

The parties agree that "[a] person accused of a misdemeanor has a Sixth Amendment right to counsel if the sentence to be imposed upon conviction includes a term of imprisonment, even if the jail time is suspended or conditioned upon a term of probation." *State v. Youngblood*, 288 Kan. 659, Syl. ¶ 2, 206 P.3d 518 (2009). The parties also agree that "[a]n uncounseled misdemeanor conviction obtained in violation of the misdemeanant's Sixth Amendment right to counsel may not be collaterally used for sentence enhancement in a subsequent criminal proceeding." 288 Kan. 659, Syl. ¶ 3.

The PSI reports identify the three prior person misdemeanor Wichita Municipal Ordinance (WMO) convictions that were aggregated into a person felony for purposes of calculating Roberts' criminal history in this case.

| Ordinance No. | Description | Case No. | Conviction Date |
|---|---|---|---|
| WMO 5.10.025 | Battery-DV | 10DV1880 | 9-27-2010 |
| WMO 5.69.010 | Violation of Protective Order | 10DV1880 | 9-27-2010 |
| WMO 5.69.010 | Violation of Protective Order | 10DV2572 | 9-27-2010 |

A first-time violation of WMO 5.10.025 (domestic battery) subjects an offender to a term of imprisonment between 48 consecutive hours and 6 months. The offender also may be required to pay a fine between $200 and $500. WMO 5.10.025(d). An offender who violates WMO 5.69.010 (violation of protective orders) is subject to three possible punishments:  (1) pay a fine of not more than $2,500, (2) a prison term of up to one year, or (3) both the fine and prison time. Given the nature of these three prior person

7

misdemeanor convictions listed in the PSI reports and the applicable law, it appears that Roberts had a Sixth Amendment right to be represented by counsel during the municipal court proceedings on all three of these charges. There is nothing in the record to establish whether Roberts was represented by counsel or, in the alternative, waived his right to counsel. If he was not represented by counsel and did not waive his right to counsel, the municipal court convictions could be constitutionally invalid under the Sixth Amendment.

The question presented for decision in this case, however, does not center on the constitutional right to counsel in misdemeanor cases but instead on who has the burden to prove the constitutional validity of prior convictions used to enhance a current sentence. Roberts argues the State bears the burden at sentencing to prove his prior misdemeanor convictions were counseled as part of its statutory duty to establish an offender's criminal history in court. The State disagrees, arguing the statute upon which Roberts relies establishes a burden shifting process that comes into play when an offender does not provide written notice of an error in the proposed criminal history worksheet.

Both parties cite to K.S.A. 2020 Supp. 21-6814, which sets forth a specific process for establishing an offender's criminal history in court.

K.S.A. 2020 Supp. 21-6814(a) provides that "[t]he offender's criminal history shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge."

K.S.A. 2020 Supp. 21-6814(b) provides that "[e]xcept to the extent disputed in accordance with subsection (c), the summary of the offender's criminal history prepared for the court by the state shall satisfy the state's burden of proof regarding an offender's criminal history."

K.S.A. 2020 Supp. 21-6814(c) requires the offender to immediately notify the district attorney and the court through written notice of any error in the proposed criminal history worksheet. The notice must specify the exact nature of the alleged error. If the offender provides the written notification, the State then bears the additional burden of "proving the disputed portion of the offender's criminal history." K.S.A. 2020 Supp. 21-6814(c).

Subsection (c) also provides that "[i]f the offender later challenges such offender's criminal history, which has been previously established, the burden of proof shall shift to the offender to prove such offender's criminal history by a preponderance of the evidence." K.S.A. 2020 Supp. 21-6814(c).

Under this statute, the State bears the burden to prove criminal history at sentencing. The State can satisfy its burden to establish criminal history by preparing for the court and providing to the offender a summary of the offender's criminal history. If the defendant provides written notice of any error in the summary criminal history report and describes the exact nature of that error, then the State must go on to prove the disputed portion of the criminal history. In the event the offender does not provide the required notice of alleged criminal history errors, then the previously established criminal history in the summary satisfies the State's burden, and the burden of proof shifts to the offender to prove the alleged criminal history error by a preponderance of the evidence.

Although he acknowledges he is raising it for the first time on appeal, Roberts asserts his challenge to criminal history satisfies the notice of error requirement set forth under the first two sentences of subsection (c) in the statute. Roberts explains his claim of illegal sentence, which is based on an error in criminal history, is made in the context of a *direct appeal*, which means that the burden of proof remains with the State to prove that

his prior municipal court convictions were counseled or that he waived his right to counsel. The State disagrees, arguing Roberts' notice of error is a "later challenge" to his criminal history under the third sentence of subsection (c) in the statute. Because the notice of error was not brought at or before sentencing, the State argues the burden shifts to Roberts—even in a direct appeal—to prove by a preponderance of the evidence that his prior municipal court convictions were uncounseled or that he did not waive his right to counsel in those proceedings.

The plain language of K.S.A. 2020 Supp. 21-6814 and Kansas caselaw support the State's position here. Although most do not cite to K.S.A. 21-6814 in discussing the burden-shifting process to prove criminal history, these cases assign burden of proof based on *when* the defendant challenges the constitutional validity of a prior conviction used to enhance a current sentence based on an absence of counsel.

We begin our review of the relevant caselaw with *State v. Patterson*, 262 Kan. 481, 939 P.2d 909 (1997). In *Patterson*, the defendant filed a postconviction motion to correct illegal sentence eight years after the original sentence imposed, arguing that the State failed to establish he was represented (or that he validly waived representation) in prior cases from Mississippi that were used to enhance his current sentence under the Habitual Criminal Act. As a result, Patterson argued the State failed to meet its burden to prove the validity of those prior convictions. The district court summarily denied the motion without a hearing. On appeal to this court, Patterson reiterated his sentence was illegal because the record did not affirmatively show that he was represented when the prior convictions used to increase his current sentence were obtained. Like here, the parties disagreed about who had the burden of proof. Patterson reasoned the State had the burden of proving he was represented by counsel in the prior Mississippi proceedings. According to Patterson, the State's failure to satisfy its burden precluded use of the prior convictions as a basis for imposing enhanced punishment. Patterson argued that "'the

10

district court should have convened a hearing [on his motion] at which time it could have properly been ascertained whether the State had truly met its burden of proof in establishing the prior felony convictions.'" 262 Kan. at 485. In response, the State argued that Patterson was mistaken in assigning the burden of proof to it in a postconviction proceeding. Citing to *Parke v. Raley*, 506 U.S. 20, 29-30, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992), the State argued that a presumption of validity clings to prior convictions so that in a collateral attack the defendant bears the burden of overcoming the presumption of validity.

The *Patterson* court was persuaded by the State's argument, holding that a defendant who collaterally challenges the use of a prior conviction to enhance his or her sentence has the burden to show he or she did not have the benefit of counsel at the prior conviction. Absent such a showing, the enhanced sentence is presumed to be regular and valid. Because his motion was collaterally attacking the enhancement of his sentence after it had become final, the court held that Patterson had the burden to show he was entitled to counsel, he was not represented by counsel, and he did not waive counsel in the prior Mississippi proceedings. The record reflected that Patterson did not object to the admission or insufficiency of the Mississippi records at trial, nor did he challenge the use of the prior convictions to enhance his sentence in his direct appeal. The court determined Patterson should not be allowed to now benefit from this "silent record" by collaterally appealing the validity of the prior convictions. 262 Kan. at 490.

In its analysis, the *Patterson* court relied heavily on the United States Supreme Court decision in *Parke*. See *Patterson*, 262 Kan. at 487-89. In *Parke*, the defendant was charged with robbery and with being a persistent felony offender in the first degree. The latter charge was premised on the defendant's two prior burglary convictions entered upon guilty pleas. The defendant never appealed those burglary convictions. Instead, the defendant waited to challenge those prior convictions until after he was charged with

11

being a persistent felony offender in the first degree. The defendant moved to suppress those convictions, arguing that the records in those cases did not contain transcripts of the plea proceedings, and therefore, the records did not affirmatively show that he knowingly and voluntarily pled guilty in either burglary case.

At issue before the United States Supreme Court was, essentially, whether the State bore the entire burden of establishing that the prior convictions were valid—specifically, that the guilty pleas were knowing and voluntary. 506 U.S. at 22-23. The Court found that the State did not. The Court held that if the matter had been presented as a challenge to the guilty pleas in a direct appeal *from the underlying burglary convictions*, a presumption of *invalidity* would attach to the pleas. 506 U.S. at 29. But the Court noted that the defendant never appealed his prior burglary convictions, which then became final. Rather, he was bringing a *collateral* challenge to the validity of the guilty pleas, and in "this very different context" a different presumption controls: the "'presumption of regularity'" that attaches to the final judgment entered in the prior case. 506 U.S. at 29 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S. Ct. 1019, 82 L. Ed. 1461 [1938]). The Court construed the defendant's argument as a collateral challenge to the underlying burglary convictions and held the defendant bears the burden of producing evidence rebutting the presumption of regularity. *Parke*, 506 U.S. at 31-32. In reaching that result, the Court noted that, "[o]n collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights." 506 U.S. at 30. The Court noted that its own precedent made clear that the presumption of regularity attaches to final judgments, which makes it appropriate to assign a proof burden to the defendant even when a collateral attack on a final conviction is brought on constitutional grounds. 506 U.S. at 31.

Four years after *Patterson*, we again were presented with the burden of proof issue in *State v. Jones*, 272 Kan. 674, 35 P.3d 887 (2001). Jones filed a motion to correct illegal sentence 17 years after his original sentence was imposed, arguing that the journal entry imposing his sentence was insufficient to establish he was represented by counsel during the previous convictions used to enhance his sentence under the Habitual Criminal Act. We reiterated that the State bears the burden of proving the constitutional validity of prior convictions at the time of sentencing. Finding the rule set forth in *Patterson* to be controlling, however, we held that a defendant who, after sentencing, collaterally challenges the constitutional validity of prior convictions used to enhance a sentence, based on a claim that the defendant did not waive counsel and the prior convictions were uncounseled, has the burden to show he or she did not waive counsel and the prior convictions were uncounseled. Absent such a showing, we held the prior convictions were presumed to be regular and valid. Given Jones offered no evidence to support his contention that he was unrepresented by counsel in his previous convictions, we held he failed to meet his burden of proof. 272 Kan. at 681 (citing *Patterson*, 262 Kan. at 490).

We next took up the burden of proof issue in *State v. Youngblood*, 288 Kan. 659, 206 P.3d 518 (2009). Youngblood challenged the use of an alleged prior uncounseled misdemeanor conviction for possession of marijuana to increase the severity of his later charge from a misdemeanor to a felony for the same crime. Unlike the defendants in *Patterson* and *Jones* who waited to challenge criminal history until after their sentences were final, Youngblood filed a motion to dismiss in his current case before sentencing, arguing that the prior municipal court conviction could not be used to increase his current charge to a felony because it was uncounseled, and he had not waived the right to counsel. For its part, the State conceded the prior municipal conviction was uncounseled but argued that Youngblood had waived his right to counsel in the municipal court proceedings.

13

The district court held an evidentiary hearing on the motion to dismiss. Youngblood introduced into evidence the municipal court docket sheet, a printed form on which the boxes for showing attorney representation and waiver of counsel were left blank in his case. The State introduced a waiver of attorney form from the municipal court proceedings which had been signed by Youngblood. However, the form was dated over three weeks after Youngblood had been sentenced and served some jail time. At a reconvened hearing, the State presented testimony from the municipal court judge who presided over Youngblood's municipal court proceedings. The municipal judge testified that it was his practice to always discuss the waiver of counsel with defendants but that he had no independent recollection of the actual discussion with Youngblood.

The district court ultimately denied Youngblood's motion to dismiss. Relying on the municipal judge's testimony that he always asks about waiver of counsel, the court found the State had proved that Youngblood waived his right to counsel. Youngblood appealed. A Court of Appeals panel reversed the district court's decision on the waiver issue finding the State failed to prove that Youngblood effectively waived his right to counsel. But the panel ultimately affirmed the district court's decision to deny Youngblood's motion to dismiss based on its finding that Youngblood had no right to counsel in the first place because, although *subject* to a jail sentence, he was not sentenced to *actual* jail time. As such, the panel held the prior conviction could be used to enhance Youngblood's punishment for the current conviction. *State v. Youngblood*, No. 96,850, 2008 WL 1868619, at *2 (Kan. App. 2008) (unpublished opinion), *rev'd* 288 Kan. 659, 206 P.3d 518 (2009).

On Youngblood's petition for review, we reversed the Court of Appeals' finding that Youngblood was not entitled to counsel in the municipal court proceedings. Relying on *Alabama v. Shelton*, 535 U.S. 654, 122 S. Ct. 1764, 152 L. Ed. 2d 888 (2002), we held as a matter of law that a person accused of a misdemeanor has a Sixth Amendment right

to counsel if the person is subject to jail time, regardless of whether that jail time ultimately is suspended or conditioned on a term of probation. *Youngblood*, 288 Kan. at 667-70.

On the issue of waiver, however, we affirmed the Court of Appeals' finding that the State failed to meet its burden to prove that Youngblood effectively waived his right to counsel. 288 Kan. at 665. We reiterated that the State bears the burden of showing that an accused was advised of his or her right to counsel and thereafter knowingly and intelligently waived that right and that a waiver of counsel may not be presumed from a silent record. 288 Kan. at 662. To determine whether the State met its burden, we reviewed the evidence presented at the district court's hearing on Youngblood's motion to dismiss. See 288 Kan. at 662-64. Based on the evidence, we determined Youngblood's prior municipal conviction was uncounseled because the State failed to show an effective waiver. Specifically, we found no evidence that Youngblood read the waiver form or that it was read to him at the plea hearing. We similarly found no evidence that Youngblood waived his right to counsel before being convicted and sentenced. 288 Kan. at 664. We ultimately held the uncounseled municipal court conviction was unconstitutional so as to preclude its use to enhance the severity level of the crime in the subsequent prosecution. 288 Kan. 659, Syl. ¶ 3 ("An uncounseled misdemeanor conviction obtained in violation of the misdemeanant's Sixth Amendment right to counsel may not be collaterally used for sentence enhancement in a subsequent criminal proceeding.").

Although not in the context of an objection to his criminal history score at sentencing, this court in *Youngblood* adhered to the burden-shifting process set forth in K.S.A. 2020 Supp. 21-6814 to allocate the burden of proof and determine whether the burden had been met. Instead of a PSI report, the State included a summary of Youngblood's prior misdemeanor conviction in the charging document to put Youngblood on notice that it was relying on this prior misdemeanor conviction to charge

15

the current crime as a felony. See K.S.A. 2020 Supp. 21-6814(b) (summary of offender's criminal history prepared for court by State shall satisfy state's burden of proof regarding offender's criminal history). Instead of an objection to the criminal history set forth in a PSI report, Youngblood filed a motion to dismiss to directly challenge the constitutionality of the prior misdemeanor. In this motion to dismiss, Youngblood stated the exact nature of his challenge: that the prior misdemeanor conviction could not be collaterally used for sentence enhancement in the current proceeding because he was not represented by counsel in the prior misdemeanor proceedings and did not effectively waive his right to counsel. See K.S.A. 2020 Supp. 21-6814(c) (requiring offender to immediately notify prosecutor and district court through written notice of any error in criminal history and to specify exact nature of alleged error). Based on the statute, and as shown by the procedural framework followed in *Youngblood*, the notification requirement does not require the defendant to come forward with any proof at all; the defendant need only provide a written objection specifying the exact nature of the alleged error. Because Youngblood properly submitted his objection, the State had to provide further evidence to prove that Youngblood's conviction was counseled or that he waived that right to counsel. See K.S.A. 2020 Supp. 21-6814(c) (if offender timely objects, State bears additional burden of proving disputed portion of offender's criminal history). As discussed above, we ultimately found the State failed to meet that burden.

We again addressed the burden of proof issue in *State v. Hughes*, 290 Kan. 159, 224 P.3d 1149 (2010). Hughes pled guilty to aggravated escape from custody. His PSI report listed three prior uncounseled misdemeanor convictions that were converted to a felony for criminal history purposes. Before sentencing, Hughes filed a motion challenging his criminal history score. Hughes alleged it was improper to aggregate the misdemeanor convictions because the waiver of counsel obtained in those cases was insufficient to prove that the waiver was knowingly and intelligently made. The district court held a hearing on the motion. At the hearing, Hughes argued the two entries in his

16

PSI report reflecting prior convictions in Dodge City Municipal Court could not be used to calculate his criminal history because the municipal judge did not certify that his waiver of counsel was knowingly and intelligently made. In response, the State argued that the waiver Hughes signed, which was attached to the journal entries in each case, did not have to be certified by the municipal judge to be valid. The district court ultimately concluded the State satisfied its burden to prove that Hughes had been fully advised of his right to counsel and that his subsequent waiver was knowingly and intelligently given.

On appeal, Hughes restated his argument that the prior municipal convictions could not be used to calculate his criminal history score because the municipal judge failed to certify his waiver was knowingly and intelligently given. Hughes also challenged on appeal the district court's finding that the State satisfied its burden to prove that Hughes had been fully advised of his right to counsel before he signed the waiver. He argued his waiver was not knowingly or intelligently given because the State failed to satisfy its burden to show that he was fully advised before executing his waivers that he had the right to appointed counsel. The Court of Appeals affirmed the district court based on its finding that there was no merit to Hughes' certification argument. 290 Kan. at 161-62.

This court granted Hughes' petition for review. 290 Kan. at 162. Given that Hughes' challenge to his waiver of counsel was made before sentencing, we found the State had the burden to show Hughes was fully advised—before executing his waiver—of his right to appointed counsel. Based on the record, we concluded the State failed to meet its burden. Given this failure, we held Hughes did not knowingly and intelligently waive his right to counsel, which rendered the prior municipal convictions constitutionally invalid. We reversed and remanded to the district court for resentencing based on a recalculated criminal history that did not include those convictions. 290 Kan. at 172-73.

17

Our most recent pronouncement on the burden of proof issue is set forth in *State v. Neal*, 292 Kan. 625, 258 P.3d 365 (2011). The defendant filed a postconviction motion to correct an illegal sentence under K.S.A. 22-3504 claiming one of his prior misdemeanor convictions should not have been used to calculate his current criminal history. The defendant alleged that two of his misdemeanor battery convictions were uncounseled and should not have been used to aggregate his misdemeanor convictions into a person felony. In support of his motion, Neal provided evidence to support the claim that his misdemeanor convictions were uncounseled. Specifically, he attached to the motion his sworn statement stating as such, as well as the disposition sheets from the misdemeanor convictions. The district court summarily denied the motion without holding a hearing, and the Court of Appeals affirmed the denial. On review, we ultimately rejected the State's contention that the disposition sheets conclusively showed that the defendant was counseled. 292 Kan. at 636-40.

On review, we began our analysis by making clear that Neal bore the burden of proof on this issue "because he has filed a motion to correct an illegal sentence after his direct appeal ended, whereas the State had borne the burden through the direct appeal." 292 Kan. at 633. In support of this analysis, we cited to the rule in *Patterson* and *Jones* that a defendant who files a motion to correct illegal sentence to collaterally challenge the constitutional validity of prior convictions used to enhance his or her sentence, based on a claim of the absence of counsel, has the burden to show he or she did not have the benefit of counsel at the prior convictions. We compared the procedural posture of *Patterson* and *Jones* to that in *Youngblood*, where the defendant directly challenged—before sentencing—use of prior convictions to enhance a sentence. We noted that, under the facts in *Youngblood*, the State had the burden to show the defendant was advised of his right to counsel and that his waiver was knowingly and intelligently made. *Neal*, 292 Kan. at 633-34.

After determining that the procedural posture dictated that Neal had the burden to prove his prior convictions were uncounseled and could not be used to calculate criminal history, we moved on to decide whether the motion to correct illegal sentence he filed satisfied that burden. We found significant that the district court summarily denied Neal's motion without a hearing, even though Neal had attached to his motion the disposition sheets from the misdemeanor convictions (which were inconclusive regarding whether the convictions were counseled) and a sworn statement stating that he was not provided counsel in the misdemeanor proceedings and did not waive counsel. Unlike the facts in *Patterson* and *Jones*, we found the record reflected that Neal provided evidence in an attempt to meet his burden to show that the prior misdemeanor convictions were invalid. Based on these facts, we remanded the matter for the district court to conduct an evidentiary hearing to determine whether Neal could satisfy his burden to show his misdemeanor convictions were uncounseled. *Neal*, 292 Kan. at 633-36.

Although the discussion above reflects that the procedural posture in *Neal* is factually distinguishable from that presented in *Patterson* and *Jones*, all three of those cases and *Hughes* stand for one single legal proposition: if a defendant—after sentencing—makes a claim that the sentence is illegal based on a challenge to the constitutional validity of prior convictions due to the absence of counsel in the prior convictions, the defendant has the burden to show he or she did not waive counsel and did not have the benefit of counsel at the prior convictions.

Having reviewed the applicable statutory provisions and the consistency of our own caselaw on the issue of who bears the burden to prove the constitutional validity of prior convictions used to enhance a current sentence, we are ready to apply the law to the facts presented here. Roberts admitted to his criminal history as set forth in the PSI reports at the sentencing hearing. See K.S.A. 2020 Supp. 21-6814(a). Roberts did not

19

notify the district court or the district attorney of any alleged error in his criminal history as required by K.S.A. 2020 Supp. 21-6814(c). Therefore, it appears the State satisfied its burden of proof at the sentencing hearing regarding Roberts' criminal history in the manner set forth in K.S.A. 2020 Supp. 21-6814(b).

But Roberts argues his admissions and failure to lodge an objection at sentencing are immaterial because the PSI reports are silent as to whether his municipal convictions were counseled. He also argues that because he can raise an illegal sentence claim at any time, the State retains the burden to prove the validity of these convictions. In making this argument, Roberts concedes that a defendant has the burden to show a prior conviction was uncounseled when a defendant files a motion to correct illegal sentence challenging the constitutional validity of prior convictions used to enhance a current sentence *after the direct appeal* of the current conviction becomes final. But he claims it is the State, not the defendant, who has that burden if the claim of illegal sentence is made *on direct appeal* before the current conviction becomes final. Roberts argues on direct appeal, it is always the State's burden, not the defendant's, to prove the constitutional validity of prior convictions. In support of this argument, Roberts relies on the holdings in *State v. Obregon*, 309 Kan. 1267, 444 P.3d 331 (2019), and *State v. Ewing*, 310 Kan. 348, 446 P.3d 463 (2019).

In *Obregon*, the defendant challenged his criminal history calculation on direct appeal. 309 Kan. at 1269. Specifically, he sought application of the newly decided *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018), and its recasting of the definition of "comparable" into a requirement that the elements of prior crimes be identical or narrower than those of a Kansas person crime to be scored as a person crime for criminal history purposes. 309 Kan. at 1269-70. Obregon did not object to his criminal history at sentencing. On direct appeal, however, he challenged the scoring of a prior Florida battery conviction because the PSI report did not indicate under which of two alternative

means his Florida conviction arose, one of which contained a touching element that was at least arguably broader than the comparable battery statute in Kansas. 309 Kan. at 1272-73.

There was no indication that Obregon admitted his criminal history in open court as required under K.S.A. 2018 Supp. 21-6814(a). The PSI report was the only item in the record establishing the conviction as part of his criminal history, and it did not indicate what version of the Florida offense he committed. Absent defendant's admission, the PSI report was the only support for the State to rely on to carry its burden to establish defendant's criminal history by a preponderance of the evidence under K.S.A. 2018 Supp. 21-6814(a). Because the PSI report did not specify which subsection of a divisible Florida statute Obregon's prior conviction arose under, this court held the PSI—which "frequently can satisfy the State's burden absent defendant's objection"—failed to provide the necessary substantial competent evidence to classify Obregon's prior Florida battery as a person offense. 309 Kan. at 1275. The case was remanded for the State to prove Obregon's criminal history, i.e., under which version of the Florida offense the defendant was convicted, by a preponderance of the evidence. 309 Kan. at 1275-76.

*Ewing* consisted of a factual scenario virtually identical to that in *Obregon*. At sentencing, Ewing did not admit his criminal history in open court under K.S.A. 2018 Supp. 21-6814(a). Ewing then challenged his criminal history on direct appeal, seeking relief under the *Wetrich* rule with regard to two prior Arkansas convictions. 310 Kan. at 350-52. Applying *Wetrich*, this court determined the Arkansas conviction for false imprisonment could not be scored as a person offense because Arkansas' shopkeeper's exception to a charge of false imprisonment was broader than Kansas' shopkeeper's exception. 310 Kan. at 355-56. We then focused on an Arkansas third-degree domestic battery prior conviction in Ewing's history. 310 Kan. at 356. The Arkansas statute at issue was divided into four subsections. One of the four subsections did not have a comparable

21

Kansas crime under the *Wetrich* test. As in *Obregon*, the only evidence of the prior Arkansas battery was the PSI report, which did not specify which subsection Ewing's prior conviction arose under. Finding that the State failed to carry its burden of proof under K.S.A. 2018 Supp. 21-6814(a), we remanded to the district court to "permit the State to demonstrate the precise Arkansas battery crime at issue." 310 Kan. at 360.

Just like *Obregon* and *Ewing*, Roberts is challenging his criminal history in a current sentence on direct appeal. But the nature of the criminal history challenge in this case is markedly different than *Obregon* and *Ewing*. In those cases, the defendants were challenging the legality of a current enhanced sentence due to the unconstitutional classification of a constitutionally valid prior crime based on comparability of that prior crime to a Kansas crime. Here, Roberts challenges the legality of his current sentence by attacking the *underlying constitutional validity of the prior convictions themselves*, which were used to enhance his current criminal history score. Our holding in *Obregon* is narrow to reflect this distinction:

> "The presentence investigation summary [on its own] frequently can satisfy the State's burden [to prove criminal history] absent defendant's objection, but more is required *when the summary does not indicate which version of the out-of-state offense the defendant committed.* See K.S.A. 2018 Supp. 21-6814(b), (c). And failing additional proof, the person-crime classification is erroneous as a matter of law. See *Wetrich*, 307 Kan. at 562 (elements of out-of-state offense must be identical to, or narrower than, elements of Kansas comparator)." 309 Kan. at 1275.

Given this narrow holding, Roberts' reliance on *Obregon* is misplaced. The plain language of K.S.A. 2020 Supp. 21-6814, along with the *Patterson*, *Jones*, *Youngblood*, *Neal*, and *Hughes* line of cases, dictates our result here. To that end, we hold, as a matter of first impression, that a defendant who fails to object under K.S.A. 2020 Supp. 21-6814(c) at sentencing to the constitutional validity of a prior conviction used to enhance a

current sentence, based on a claim of the absence of counsel without a valid waiver, has the burden to show the prior conviction is invalid, regardless of whether the defendant's constitutional challenge to the allegedly uncounseled conviction in criminal history is brought on direct appeal of the current sentence or in a proceeding collaterally attacking that sentence.

In so holding, we acknowledge the illegal sentence challenges in *Patterson*, *Jones*, and *Neal* were made in proceedings after the current sentence had become final and that the illegal sentence challenge presented in this case challenges the constitutional validity of a prior conviction used to enhance a current sentence for the first time in his direct appeal of the current sentence. But this distinction is inconsequential for purposes of our burden of proof analysis because both here and in *Patterson*, *Jones*, and *Neal*, the defendants failed to make the required objection under K.S.A. 21-6814(c) to the constitutional validity of the prior conviction used to enhance a current sentence. Absent an objection under our state procedural statute setting forth the burden of proof in establishing criminal history, we necessarily hold a presumption of regularity attaches to a final judgment entered in a prior case and the defendant bears the burden of producing evidence to rebut that presumption. See *Parke*, 506 U.S. at 31-32 (holding that since presumption of regularity attached to final judgments, it is appropriate to assign proof burden to the defendant, even when collateral attack on final conviction is based on constitutional grounds).

Notably, our holding in this case does not disturb our holdings in *Youngblood* and *Hughes*. In those cases, the defendants objected at or before the current sentencing proceedings to the constitutional validity of a conviction that would be used to enhance a current sentence. Because the defendants in those cases raised the issue at or before sentencing, we held the State has the burden to prove the constitutional validity of the prior conviction and that burden remained with the State in a direct appeal of the current

23

sentence. See *Youngblood*, 288 Kan. at 660; *Hughes*, 290 Kan. at 172-73. If, as the defendants did in *Youngblood* and *Hughes*, Roberts had objected at or before the current sentencing proceedings to the constitutional validity of his prior misdemeanor convictions, then the State would have had the burden at sentencing to prove the prior misdemeanor convictions were counseled or that the defendant had validly waived counsel and that burden would have remained in this direct appeal. But those are not the facts here.

CONCLUSION

Roberts admitted to his criminal history and did not object at or before sentencing to the constitutional validity or uncounseled nature of the prior misdemeanor convictions used to enhance his current sentence. Accordingly, the criminal history set forth in the PSI reports satisfied the State's burden to prove the constitutional validity of the prior misdemeanor convictions. Because he failed to object under K.S.A. 2020 Supp. 21-6814(c) at or before sentencing to the constitutional validity of the prior misdemeanor convictions used to enhance a current sentence, based on a claim of the absence of counsel, Roberts has the burden to show by a preponderance of the evidence in this direct appeal that the prior convictions used to enhance his current sentence are constitutionally invalid. Roberts has failed to satisfy his burden. On the sole issue presented to us on review, the judgment of the Court of Appeals dismissing the appeal of that issue is affirmed.